(Nos. 2152, 2153, 2154—Consolidated—)

Richard Cahill, No. 2152, George Denny, No. 2153, Julia Porter, Admx., No. 2154, Claimants, *vs.* State of Illinois, Respondent.

*Opinion filed December 11, 1934.*

E. J. Gorey, for claimants.

Otto Kerner, Attorney General; John Kasserman, Assistant Attorney General, for respondent.

Mr. Justice Yantis delivered the opinion of the court:

The three above numbered cases were filed separately, but by agreement of counsel, were afterwards consolidated. The facts involve little dispute and are as follows:

On the 18th day of December, 1932, between five and six o'clock A. M., Richard Cahill, George Denny and Ernest B. Porter were riding in a Plymouth automobile on S. B. I. Route No. 18 eastward toward the village of Lisle. George Denny was the owner of the car, Richard Cahill was driving same

and Ernest B. Porter was in the rear seat. Route No. 18 crossed over and above Route No. 53 on a concrete elevated bridge which was elevated approximately fifty feet (50'). On the north and south sides of Route No. 18 for a distance of approximately six-hundred feet (600') on both sides of such bridge was a concrete wall or railing, which was about four feet (4') high above the surface of the highway; that a connecting road, ramp or incline extended in a southerly direction from Route 18 for a distance of about six hundred feet (600') where it connected with Route 53.

Claimant contends it was the duty of respondent to have so built and so maintained the highway at the point in question, that it would furnish safe and convenient passage to all persons traveling same, but that it had carelessly and negligently constructed the concrete wall in question and had permitted same to remain unguarded, unlighted and without warning and that as a result the claimants while in the exercise of due care and diligence for their own care and safety, were thereby, and through the negligence of the State, injured as alleged. The facts further appear that it was a misty, foggy morning. There was no reflecting light or signal on the concrete end-post in question, and the record indicates that the conditions were such as to easily confuse a driver who was not in the exercise of more than ordinary care. It is a case which appeals to the sympathetic minds of the court, but in neither of the three claims in question can an award against the State be authorized.

The State, in constructing the ramp or incline in question, was endeavoring to improve the traveling conditions for the general public. Considerable testimony appears in the record to show the condition and manner of construction of the highways at the intersection in question, and to show that such construction was dangerous to the public, and that the failure to erect warning signals that could be seen day or night, was negligence upon the part of the employees of the Highway Department. As stated in *Morrissey* vs. *State*,

"In the opinion of the court it is not necessary to discuss at length the evidence in detail. As shown by the claim and the record, the highway and the concrete abutment of which complaint is made as to the method of construction and maintenance, were built by, are owned and are controlled by the State of Illinois. In the construction and maintenance of its roads, the State acts in a governmental capacity and in the exercise of its governmental functions, it does not become liable in actions of tort by

reason of the malfeasance, misfeasance or negligence of its officers or agents in the absence of a Statute creating such liability."

*Morrissey* vs. *State of Illinois*, 2 C. C. R. 454.

The Highway Department of Illinois, like the State Board of Agriculture, is an arm or agency of the State, existing for the promotion of the public good.

As stated in the "Minear Case", "If, as we hold, the State Board of Agriculture is an agency of the State in the exercise of governmental functions, it is not liable, under the common law for injuries claimed to have been sustained as a result of negligence." (*Minear* vs. *State Board*, etc. 259, Ill. at 559.)

The fact that specific power had been granted in the Act creating the State Board of Agriculture for it to sue and be sued, was there held not to subject the State to a liability for torts. As the court there said, there is a distinct difference between conferring suability as to debts and other liabilities, for which the State is now liable and extending liability for causes not heretofore recognized.

The General Assembly has never enacted a law making the State liable for damages caused by the negligent construction or maintenance of a public road, and in the absence of such statute, the court is of the opinion that it should make no award.

*Chumbler* vs. *State*, 6 C. C. R. 138.

*Hollenbeck* vs. *County of Winnebago*, 95 Ill. 148.

The three claims are, and each of them is, hereby denied and the respective claims are dismissed.